IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL BROOKS,

                                        Plaintiff,

           v.                                        Civil Action No.
                                                     9:02-CV-446 (GLS/DEP)

GLENN S. GOORD, Commissioner of DOCS,
 *et al.,*

                                        Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

MICHAEL BROOKS, *Pro Se*
98-A-638110
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902-0500

FOR DEFENDANTS:

HON. ELIOT SPITZER                        PATRICK F. MACRAE
Office of the Attorney General            Ass't Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Michael Brooks, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 complaining of an alleged deprivation of procedural due process, in derogation of his rights under the Fourteenth Amendment to the United States Constitution.  Plaintiff's claims stem from a disciplinary hearing which resulted in his disciplinary confinement in a facility special housing unit ("SHU") for a period of well over one year.  Plaintiff maintains that the disciplinary determination that resulted in his SHU confinement, which determination was later reversed based upon a finding that the hearing officer had failed to provide the plaintiff with relevant, requested information, was constitutionally deficient in that he was not provided with the minimal procedural safeguards required under the Fourteenth Amendment.

Currently pending before the court is a motion by the defendants seeking summary judgment dismissing plaintiff's complaint in its entirety. In their motion, defendants maintain that the court is positioned to determine, as a matter of law, that no procedural due process violation occurred.  While defendants' motion is unopposed, I have reviewed it to

2

determine its facial sufficiency on the merits.  Having done so, I find the existence of genuinely disputed issues of material fact which preclude the entry of summary judgment, except as to the question of lack of personal involvement by one of the defendants and as to plaintiff's claims which address the alleged partiality of the assigned original hearing officer.

I.   BACKGROUND

At all times relevant to his complaint, plaintiff was a prison inmate within the custody of the New York State Department of Correctional Services ("DOCS").  On December 15, 1999, while at the Auburn Correctional Facility ("Auburn") awaiting completion of a transfer from the prison in which he was previously confined to the Great Meadow Correctional Facility ("Great Meadow"), plaintiff was involved in an altercation with corrections officers at the facility.  Complaint (Dkt. No. 1) ¶ 9.  As a result of the incident, plaintiff was issued three separate misbehavior reports.  *Id.*  The first misbehavior report was authored by Corrections Officer Debois, and endorsed by Corrections Officer Clarke, and charged plaintiff with assault on staff (Rule 100.11) and fighting (Rule 100.13), based upon allegations that Brooks struck Corrections Officer DeBois in the head and face with closed fists before being subdued

3

through the use of mechanical restraints applied by Corrections Sergeant

Kirkpatrick.  Defendants' Exhibits (Dkt. No. 28) Exh. K.  The second

report, issued by Corrections Officer Hai and endorsed by Corrections

Officer Elser, charged interference with an employee (Rule 107.10) and

refusal to obey a direct order (Rule 106.10), and accused plaintiff of

struggling against his restraints and attempting to break free while being

escorted to the Auburn SHU following the initial incident.  *Id.* Exh. L.  The

third report, issued by Corrections Officer Knight and endorsed by

Corrections Officers Elser and Hai, charged the plaintiff with assault (Rule

100.11) and failure to obey a direct order (Rule 106.10), and involved an

incident which occurred upon his arrival at the SHU where he reportedly

kicked Corrections Officer Knight.  *Id.* Exh. M.

Following plaintiff's arrival at Great Meadow, Corrections Sergeant D.

Murray was assigned to assist him in connection with the three

disciplinary charges.  Complaint (Dkt. No. 1) ¶ 18.  Plaintiff met with

Sergeant Murray on December 17, 1999 and requested that several

DOCS employees be interviewed, including all staff involved, the

corrections officer from the Auburn "Lock Box", SHU Sergeant Byrne, the

D block Sergeant, and the nurse.  *Id.* ¶¶ 18-20; Defendants' Exhibit (Dkt.

No. 28) Exh. O.  Plaintiff also requested that his employee assistant contact "all inmates that were [at] Auburn [in] transit at the time, all inmate porters [at] the time, inmates in I tank [at] Auburn, all to/froms and U.I., Directive 4944, a copy of [the] investigation by Capt. or Lt., copy of grievance filed on 12-16-99, [and copies] of videotapes from Auburn and [Great Meadow]." *Id.*; *see also* Complaint (Dkt. No. 1) ¶ 19.  After the December meeting with plaintiff, Murray advised the disciplinary office that he would be unable to assist the plaintiff due to scheduled time off, a fact of which the plaintiff claims he was not made aware.  Complaint (Dkt. No. 1) ¶¶ 22-26; Defendants' Exhibits (Dkt. No. 28) Exh. J (Murray Response to Plaintiff's Request for Admissions) ¶ 6.

On December 22, 1999 a Tier III disciplinary hearing was commenced to address the three misbehavior reports issued during the prior week; Corrections Lieutenant Glenn Gasselin was assigned to serve as the hearing officer for that proceeding.[1]  Complaint (Dkt. No. 1) ¶ 27;

---

[1]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

Defendants' Exhibits (Dkt. No. 28) Exh. P.  At the outset of the hearing,

after being advised of his rights, plaintiff entered a plea of not guilty to

each of the charges.  Complaint (Dkt. No. 1) ¶ 30; Defendants' Exhibit

(Dkt. No. 28) Exh. P.  Upon completion of the hearing, which was

continued to December 29, 1999, plaintiff was found guilty on all counts,

with the exception of the fighting (Rule 100.13) charge lodged by

Corrections Officer DeBois in the first misbehavior report.  Defendants'

Exhibits (Dkt. No. 28) Exh. Q.  As a result of that finding Hearing Officer

Gasselin imposed a penalty of thirty-six months of SHU disciplinary

confinement, with a corresponding loss of good time credits and package,

commissary and telephone privileges.  *Id.*

Plaintiff appealed the adverse disciplinary determination to Donald

Selsky, the DOCS Director of Special Housing/Inmate Discipline.

Complaint (Dkt. No. 1) ¶¶ 90-91; Defendants' Exhibits (Dkt. No. 28) Exh.

S.  That appeal resulted in affirmance of the findings of guilt, though with a

reduction of the corresponding penalties associated with those findings

from thirty-six to eighteen months.  *Id.*

Plaintiff challenged the resulting disciplinary determination, as

modified internally within the DOCS, by commencing a proceeding in the

6

New York state courts pursuant to Article 78 of the New York Civil

Practice Law and Rules.  Complaint (Dkt. No. 1) ¶¶ 92-94.  That

application was rejected by the Albany County Court on February 9, 2001,

and petitioner appealed that determination to the New York State

Supreme Court, Appellate Division, Third Judicial Department.  *Brooks v.*

*Goord*, 288 A.D.2d 793, 733 N.Y.S.2d 644 (3d Dept. 2001).  On August

29, 2001, while plaintiff's Article 78 petition was pending on appeal, the

DOCS ordered administrative reversal of the hearing determination by

memorandum setting forth the following terse explanation of its actions:

> Reversed after discussion with Assistant Attorney
> General.  Hearing Officer inappropriately denied inmate
> requested documentation, which may have been relevent
> [sic] to his defense.

Defendants' Exhibits (Dkt. No. 28) Exh. T.  Plaintiff was thereafter

released from segregation after having served four hundred and fifty-six

days of the disciplinary SHU penalty, and his records were expunged with

respect to the incident and hearing determination.[2]  Complaint (Dkt. No. 1)

¶ 100.

II.  <u>PROCEDURAL HISTORY</u>

---

[2]     The Third Department later dismissed Brooks' appeal as moot.  *Brooks*,
288 A.D.2d 793, 733 N.Y.S.2d 644.

7

Plaintiff commenced this action on March 25, 2002.  Complaint (Dkt. No. 1).  In his complaint plaintiff has named, as defendants, DOCS Commissioner Glenn S. Goord; Donald Selsky, who as previously noted is the DOCS Director of Special Housing/Inmate Discipline; the assigned inmate employee assistant, Saegeant Murray; and the presiding hearing officer, Lieutenant Gasselin.

Following joinder of issue by the filing of an answer on behalf of the defendants on July 31, 2002 (Dkt. No. 12), as well as the exchange of written discovery and the taking of plaintiff's deposition, defendants moved on October 31, 2003 seeking the entry of summary judgment dismissing plaintiff's complaint.  Dkt. No. 26-28.  In their motion, defendants argue that the court should find, as a matter of law, that plaintiff received the constitutionally guaranteed minimal due process associated with his disciplinary hearing.  Defendants Selsky and Goord also seek dismissal of plaintiff's claims against them based upon their alleged lack of personal involvement in the constitutional violations asserted.  Plaintiff has not submitted any opposition to the pending motion.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant

8

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.  <u>DISCUSSION</u>

    A.  <u>Legal Significance Of Plaintiff's Failure To Oppose Defendants'
Motion</u>

The first issue to be addressed is the legal significance, if any, of

plaintiff's failure to oppose defendants' summary judgment motion, and

specifically whether such a failure automatically entitles the defendants to

dismissal based upon their motion.

Local Rule 7.1(b)(3) provides that

> [w]here a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden demonstrating entitlement to the relief requested
> therein, failure by the non-moving party to file or serve any
> papers as required by this Rule shall be deemed by the
> court as consent to the granting or denial of the motion,
> as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  Even while recognizing that *pro se* plaintiffs are

entitled to special latitude when defending against summary judgment

motions (*see Jemzura v. Public Service Comm'n*, 961 F. Supp. 406, 415

(N.D.N.Y. 1997) (McAvoy, C.J.)), courts in this district have found it

appropriate to grant a dispositive motion pursuant to Local Rule 7.1(b)(3)

based upon a *pro se* plaintiff's failure to respond.  *Robinson v. Delgado*,

9

96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. and Hurd, M.J.); *Cotto v. Senkowski*, 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. and Hurd, M.J.); *Wilmer v. Torian*, 980 F.Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. and Hurd, M.J.).  As can be seen by the face of the rule, before summary judgment can be granted – even in the absence of opposition – the court must review the motion to determine whether it is facially meritorious. *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp.2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

In making its review of the merits of an unopposed summary judgment motion, the court may properly accept as true the assertions in defendants' motion papers, and, in particular, their statement pursuant to Local Rule 7.1(a)(3).[3]  Courts in this district have not hesitated to enforce Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts admitted upon an opposing party's failure to properly respond.  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000)

---

[3]      According to Local Rule 7.1(a)(3), "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." *See* N.D.N.Y.L.R. 7.1(a)(3).

(McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).

Based upon the foregoing, and notwithstanding plaintiff's *pro se* status, I recommend that the court accept defendants' assertion of facts as set forth in their Rule 7.1(a)(3) statement as uncontroverted, and proceed to review the facial sufficiency of defendants' motion in light of those facts no longer in dispute.

B.  Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the nonmoving party's claim.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4.  Once that

11

burden is met, the opposing party must show, through affidavits or otherwise, that there is a material factual issue for trial.[4]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  When deciding a summary judgment motion, the court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.  *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

C.   Merits Of Plaintiff's Due Process Allegations

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural

_____

[4]     A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

safeguards.  *See Tellier v. Fields*, 260 F.3d 69, 79-80 (2d Cir. 2000)

(citations omitted); *Hynes*, 143 F.3d at 658; *Bedoya v. Coughlin*, 91 F.3d

349, 351-52 (2d Cir. 1996).  In their motion, defendants seemingly

acknowledge that disciplinary SHU confinement for a period of four

hundred and fifty-six days represents a constitutionally significant

deprivation sufficient to trigger the due process requirements of the

Fourteenth Amendment.  *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d

Cir. 2000). Defendants argue, nonetheless, that based upon the record

now before it the court is positioned to find as a matter of law that the

plaintiff received the requisite, constitutionally mandated level of

procedural safeguards.

The procedural protections to which a prison inmate is entitled before

being deprived of a constitutionally cognizable liberty interest are well

established, the contours of the required protections having been

articulated in *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S. Ct. 2963,

2978-80 (1974).  Under *Wolff*, the constitutionally mandated due process

requirements include 1) written notice of the charges; 2) the opportunity to

appear at a disciplinary hearing and present witnesses and evidence,

subject to legitimate safety and penological concerns; 3) a written

statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-70, 94 S. Ct. at 2978-83.

In this instance, plaintiff asserts constitutional shortcomings in connection with the proceedings against him, including the failure to provide him with meaningful employee assistance; the denial of an opportunity to call witnesses and obtain evidence, including photographs and videotape recordings, to support his defense; and the assignment of a hearing officer who was not impartial, but instead exhibited bias against the plaintiff and assumed an adversarial role during the hearing.[5]

### 1.   Hearing Officer Bias

Faced with the lack of any meaningful clarification from the plaintiff regarding the prong of his complaint which addresses the actions of hearing officer Lieutenant Gasselin, I have combed the record, including a transcript of the disciplinary hearing, in an effort to identify any evidence to

---

[5]      In their motion defendants also assert that the hearing officer's decision was based upon a constitutionally sufficient quantum of evidence to satisfy the requisite standard under *Superintendent Massachusetts Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774 (1985).  It does not appear, however, that plaintiff's due process claim raises this issue, nor would resolution of this issue in defendants' favor be necessarily dispositive of the due process claims now being raised.

support the conclusory allegation that the plaintiff was denied his right to have the charges disposed of by a neutral, detached and unbiased hearing officer.  Having done so, I find no evidence from which a reasonable factfinder could make that finding.  Consequently, I recommend the entry of summary judgment dismissing plaintiff's second and eighth causes of action, both of which address defendant Gasselin's role as a hearing officer.[6]

### 2.   Employee Assistance

Plaintiff's claims regarding the employee assistance provided to him in preparation for and during the Tier III hearing stand on different footing.

As was previously noted, the right to meaningful employee assistance is among the paramount guarantees acknowledged in *Wolff* for inmates facing disciplinary charges which could result in the curtailment of a liberty interest.  *Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).  Clearly, this right does not guarantee the equivalent of legal counsel assigned to investigate and defend an accused prisoner.  *Wolff*, 418 U.S. at 569-70,

---

[6]      In his second cause of action, plaintiff complains of the hearing officer's assumption of the role of Brooks' employee assistant.  *See* Complaint (Dkt. No. 1) ¶ 102.  It is unclear to me how the hearing officer's attempts to aid the plaintiff in the presenting his defense could work to his detriment, much less support a due process deprivation claim.

94 S. Ct. at 2981-82; *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (citing *Wolff*). As the Second Circuit noted in a case cited by the defendants in support of their arguments, however, a prison inmate has a right to meaningful assistance in certain circumstances where he or she is unable, due to limitations which can include confinement to SHU, to "'marshal evidence and present a defense[.]'" *Silva*, 992 F.2d at 22 (quoting *Eng*, 858 F.2d at 898). Because at the time of his disciplinary hearing the plaintiff was apparently relegated to the Great Meadow SHU, and the witnesses and evidence required for his defense appear to have been principally if not exclusively at Auburn, under *Silva* and *Eng* he was entitled to meaningful employee assistance.

Although plaintiff's request for an employee assistant was honored, the person designated to fulfill that role was, by his own admission, unable to provide any significant degree of assistance in light of his preordained vacation schedule. While the record is less than clear on this score, it appears that no substitute employee assistance was provided to the plaintiff, nor was the assigned assistant able to interview the witnesses and obtain the documents requested by the plaintiff. On this basis, giving the plaintiff the benefit of all inferences, I cannot say that no reasonable

factfinder could find a deprivation of due process based upon the inability

of defendant's assigned employee representative to provide him with

meaningful assistance.  I therefore recommend denial of the portions of

defendants' motion seeking dismissal of plaintiff's first and fifth causes of

action.

### 3.      Failure To Provide Documents And Witnesses

The balance of plaintiff's complaint relates to defendants' failure to

provide witnesses and documents for use in his defense at the disciplinary

hearing, or to articulate a legitimate, penological concern for denying him

access to the requested evidence.  Among the evidence requested, but

denied, were photographs and memoranda, plaintiff having been told that

photographs were ordinarily not provided in the context of a disciplinary

proceeding, but instead must be requested by way of a Freedom of

Information Law ("FOIL") application.  *See* Defendants' Exhibits (Dkt. No.

28) Exh. R, at 5-6.

It is difficult to fathom how the court could conclude, as a matter of

law, that no procedural due process violation occurred through the denial

to plaintiff of the requested information, particularly in view of the DOCS'

dismissal of the disciplinary charges, of its own initiative, based upon the

hearing officer's failure to provide evidence which could have proven relevant to plaintiff's claims.  *See* Defendants' Exhibits (Dkt. No. 28) Exh. T.  I therefore recommend denial of defendants' motion for summary judgment dismissing plaintiff's third, fourth, sixth and seventh causes of action.

D.  Personal Involvement

In addition to seeking dismissal of plaintiff's claims on the merit, defendants Goord and Selsky also assert that they are entitled to summary to dismissal of Brooks' claims against based upon lack of personal involvement.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

18

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the action; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring.  *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

In this instance I am unable to conclude, as a matter of law, that no factfinder could conclude that defendant Selsky had the requisite degree of personal involvement in the constitutional violations alleged.  In his position as DOCS Director of Special Housing/Inmate Discipline, defendant Selsky was charged with reviewing the disciplinary proceeding against plaintiff, and as such was well-positioned to discern the existence of procedural due process violations and to remedy those violations.  In

19

fact, when plaintiff initially appealed the adverse disciplinary determination to Selsky, he affirmed the findings of guilt and merely reduced Brooks' penalty.  Complaint (Dkt. No. 1) ¶¶ 90-91; Defendants' Exhibits (Dkt. No. 28) Exh. S.  It was not, however, until plaintiff commenced an Article 78 proceeding that the DOCS once again reviewed the matter and ultimately concluded that the resulting determination could not withstand scrutiny.

Plaintiff's claims against defendant Goord stand on different footing. Plaintiff's allegations against the DOCS Commissioner are completely devoid of any showing of a tangible connection between his actions and plaintiff's alleged injuries.  *E.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).  "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers*, 780 F.2d at 210).  Plaintiff has therefore failed to establish the requisite nexus between defendant Goord's actions and the constitutional violations alleged.

Based upon my careful review of the record now before the court, I

find lacking any evidence of defendant Goord's  awareness of

plaintiff's claims of procedural due process.  As such, defendant Goord

lacks the requisite degree of personal involvement, and should be

dismissed from this action.  Plaintiff's claims against defendant Selsky,

however, are sufficiently stated.  Accordingly, I recommend that

defendants' motion seeking summary dismissal of plaintiff's claims against

him be denied.

IV.   SUMMARY AND RECOMMENDATION

Despite being unopposed, defendants' motion fails to establish, as a

matter of law, that the disciplinary proceedings which led to plaintiff's

disciplinary SHU confinement for a period of four hundred and fifty-six

days were not procedurally defective.  Rather, a reasonable factfinder

could conclude that the determination was the result of procedural due

process violations, including defendants' failure to provide meaningful

employee assistance to the plaintiff and to honor his request for the

production of relevant documents and witnesses.  Defendants are,

however, entitled to summary judgment dismissing plaintiff's claims to the

extent of his allegations that the assigned hearing officer was biased,

based upon the lack of any evidence in the record from which such

partiality could be inferred.  The portion of defendants' motion addressing

personal involvement of the defendants should be granted with regard to

DOCS Commissioner Goord, based upon the lack of any evidence

suggesting his awareness of and involvement in the constitutional

violations alleged, but should be denied with regard to defendant Selsky

who, based upon his appellate review of the disciplinary determination,

was in a position to detect and remedy the constitutional violation alleged,

but did not.

Based upon the foregoing it is

RECOMMENDED that defendants' motion for summary judgment

(Dkt. No. 28-1) be GRANTED, in part, and that defendants' complaint be

DISMISSED with regard to defendant Glenn S. Goord, and further that

plaintiff's second and eighth causes of action be DISMISSED, but that

otherwise defendants' motion be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within

which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS

REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*,

984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties by regular mail.

Dated:     October 26, 2004          David E. Peebles
           Syracuse, NY              U.S. Magistrate Judge

G:\ISSUES\civil rights\procedural due process\brooks.wpd